# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF NEW YORK

Michael Moreno,   No. 9:02-CV-1435 (PAM/GJD)

    Plaintiff,

v.   **MEMORANDUM AND ORDER**

T. Ricks, Superintendent, Upstate
Correctional Facility, et al.,

    Defendants.

---

This matter is before the Court[1] on Defendants' Motion for Summary Judgment. Plaintiff has not opposed the Motion. Based on the submissions by Defendants, the Court finds that summary judgment is appropriate because there are no genuine issues of material fact remaining for trial and Defendants are entitled to judgment as a matter of law.

**BACKGROUND**

Plaintiff is an inmate at the Attica Correctional Facility, but his claims stem from events that occurred during his time at the Upstate Correctional Facility in New York ("Upstate"). Upstate is a maximum security facility that operates as a Special Housing Facility for inmates serving disciplinary sentences. The prison is designed to segregate inmates with histories of significant disciplinary problems from the general prison population. Defendants are numerous prison officials at Upstate.

---

[1] Pursuant to an assignment under 28 U.S.C. § 294(d), the undersigned is the Judge of record in this case.

When Plaintiff arrived at Upstate, he was assigned to a double-bunk cell. He complained constantly about having to share a cell and sought to be assigned to a single-bunk cell or transferred to another facility. On August 21, 2001, he was assigned a new cellmate, Israel Diaz. Plaintiff continued to complain about the double cell, but Plaintiff and Diaz bunked together without conflict for almost a month. Prison officials observed Diaz's demeanor and behavior to be peaceful and non-aggressive. Plaintiff never complained to prison staff of any threat of physical danger from Diaz, although he continued to ask for a single cell or to be transferred.

On September 22, 2001, Plaintiff stood inside his cell with his arms extended through the feedup hatch in his door. This interfered with the delivery of lunch trays through the hatch. Prison staff repeatedly ordered him to retract his arms, but Plaintiff said he would not move his arms until he was assigned to a single cell.[2] Plaintiff voiced no complaints about Diaz, and Diaz had no visible reaction to Plaintiff's behavior. That evening, Defendant Royce Corbine heard someone kicking Plaintiff's cell door, and when he arrived at the cell, he observed an injury to Plaintiff's face. Corbine summoned Defendant William Allen, who removed Diaz and Plaintiff from the cell. Plaintiff said that Diaz had attacked him, but Diaz denied any altercation and said Plaintiff had injured himself. No prison officials were present during the altercation. Plaintiff was immediately brought to a nurse for medical treatment, and the nurse cleaned and bandaged a cut on Plaintiff's lip. There were no other injuries other than some

---

[2] Plaintiff was later convicted in an administrative hearing of refusing to obey direct orders to remove his arms from the feedup hatch.

2

minor scratches and abrasions on his knuckles. At a subsequent disciplinary hearing, Plaintiff was convicted of fighting, but Diaz was found not guilty.

Plaintiff brings a deliberate indifference claim under the Eighth Amendment based on the altercation with Diaz. The Amended Complaint alleges that Plaintiff and Diaz had asked prison officials several times to be moved to separate cells, but the officials refused. Plaintiff further avers that prison officials told Diaz that Plaintiff was an informant and a homosexual, which accelerated the conflict. According to the Amended Complaint, prison staff stood by and mocked Plaintiff during the altercation.

In addition to the September 22, 2001 incident, Plaintiff also brings claims against Defendants for denial of recreation, closing his hand in the feedup hatch, spreading rumors, and giving his mail to other inmates. Finally, Plaintiff alleges that officials retaliated against him for filing this case by depriving him of food, banging on his cell wall on one occasion, and writing false misbehavior reports in September 2001 and May 2002.

**DISCUSSION**

**A.     Standard of Review**

Summary judgment is proper if there are no disputed issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The Court must resolve ambiguities and draw all reasonable inferences in favor of the nonmoving party. Nora Beverages, Inc. v. Perrier Group of Am., Inc., 164 F.3d 736, 742 (2d Cir. 1998). However, as the United States Supreme Court has stated, "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal

3

Rules as a whole, which are designed to secure the just, speedy, and inexpensive determination of every action." Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986) (quotations omitted).

The moving party bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. Id. at 323. A party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials, but must set forth specific facts in the record showing that there is a genuine issue for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986).

**B.     Qualified Immunity**

Defendants assert they are entitled to qualified immunity on all of Plaintiff's claims. "For a defendant to secure summary judgment on the ground of qualified immunity, he must show that no reasonable jury, viewing the evidence in the light most favorable to the [p]laintiff, could conclude that the defendant's actions were objectively unreasonable in light of clearly established law." Ford v. Moore, 237 F.3d 156, 162 (2d Cir. 2001) (citation omitted). A court must first determine whether the facts in the record show a violation of the plaintiff's constitutional rights. See Saucier v. Katz, 533 U.S. 194, 201 (2001); Palmer v. Richards, 364 F.3d 60, 64 (2d Cir. 2004) (citing Saucier). If there is no constitutional violation, the inquiry ends, and the defendant is entitled to summary judgment on qualified immunity grounds. See Saucier, 533 U.S. at 201; Harhay v. Town of Ellington Bd. of Educ., 323 F.3d 206, 211-12 (2d Cir. 2003). However, if the facts establish a constitutional violation, the court must then decide if the constitutional right was clearly established at the time of the alleged violation. See Saucier, 533 U.S. at 201; Cancel v. Mazzuca, 205 F. Supp. 2d 128, 139 (S.D.N.Y. 2002).

1.      Eighth Amendment Claim

Plaintiff's primary constitutional claim is founded on the Eighth Amendment's prescript that prison officials must guard the safety of inmates in their custody. See Hayes v. New York City Dep't of Corr., 84 F.3d 614, 620 (2d Cir. 1996). To show deliberate indifference to safety, "the plaintiff must demonstrate that he is incarcerated under conditions posing a substantial risk of serious harm" and "that the defendant prison officials possessed sufficient culpable intent." Id.

The record before the Court reveals that Plaintiff and Diaz lived peacefully together for almost a month. Diaz was quiet and compliant. Plaintiff never told corrections officers that Diaz threatened him or posed a risk of serious harm. At a disciplinary hearing after the purported fight, Plaintiff was convicted for fighting, but Diaz was not. Plaintiff has not demonstrated that the conditions of his incarceration posed a serious risk of substantial harm. Plaintiff also has no evidence that any Defendant acted with the requisite state of mind. There was no history of violence between Plaintiff and his cellmate, and neither Plaintiff nor Diaz had complained to prison staff about each other. Thus, Defendants had no cause to believe that Plaintiff was in danger.

Plaintiff has failed to show either that he was incarcerated under conditions posing a serious risk of grave harm or that any Defendant possessed culpable intent. Defendants are therefore entitled to qualified immunity on the Eighth Amendment claim because Plaintiff has

not shown a violation of a constitutional right.[3]

    2.    <u>Retaliation</u>

Plaintiff asserts several bases for his retaliation claim. He avers that corrections officers issued a misbehavior report on September 26, 2001,[4] in retaliation for filing grievances and complaints. Plaintiff also alleges that prison officials deprived him of food on four occasions in November 2002 in retaliation for filing this case.

Prison officials may not retaliate against inmates for exercising their rights to access the courts or petition the government for the redress of grievances. <u>Franco v. Kelly</u>, 854 F.2d 584, 589 (2d Cir. 1988). To establish a claim for retaliation under § 1983, Plaintiff must show that: "(1) the conduct cited as the cause for retaliation is protected; (2) the defendant took adverse action against the plaintiff; and (3) there was a causal connection between the protected conduct and the adverse action." <u>Spies v. Kelleher</u>, 151 Fed. App'x 72, 73 (2d Cir. 2005) (citing <u>Davis v. Goord</u>, 320 F.3d 346, 352 (2d Cir. 2003)). Courts should view inmates' retaliation claims with skepticism because retaliation claims are easily fabricated. <u>See id.</u> (citation omitted).

Plaintiff's claim of retaliation based on the September 2001 misbehavior reports fail for lack of causation. There is no evidence from which to infer that his grievances and

---

[3] The Eighth Amendment claim also fails because Plaintiff suffered no more than minor and temporary injuries. <u>See</u> <u>Gibeau v. Nellis</u>, 18 F.3d 107, 110 (2d Cir. 1994) (stating that a de minimus injury does not amount to a violation of the Eighth Amendment).

[4] The record actually contains two misbehavior reports issued on this day, and the Court will address both reports.

complaints caused prison staff to file the reports. Rather, prison officials issued one of the reports because Plaintiff prevented his cellmate from entering their cell by holding the cell door closed, and the other report because Plaintiff was lying on the wrong bunk in his cell.

The claim of retaliation based on deprivation of food also fails for lack of causation. Prison records indicate that Plaintiff's meals were withheld on only two occasions in November 2002, the reason being that Plaintiff refused to comply with orders to stand in the back of his cell during meal delivery. On another occasion, Plaintiff complained of being served a partial meal, but the grievance was investigated and found to be false. There is no evidence in the record supporting a causal connection between protected conduct and the withholding of food.

Plaintiff has not shown that Defendants retaliated against him either by filing misbehavior reports or by withholding food. Accordingly, Defendants are entitled to qualified immunity on these claims.

3.   Additional Claims

Turning to Plaintiff's remaining claims, there is no evidence whatsoever that any prison official closed Plaintiff's hand in a feedup hatch, spread rumors about him, gave his mail to other inmates, denied him recreation, banged on his cell door, or issued a misbehavior report in May 2002. A party opposing summary judgment may not rely solely on the allegations in the complaint but must identify specific factual issues in the record. See Anderson, 477 U.S. at 256. Accordingly, Defendants are entitled to summary judgment on these claims.

**CONCLUSION**

Defendants are entitled to summary judgment on all claims. Accordingly, based on all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that Defendants' Motion for Summary Judgment (Docket No. 64) is **GRANTED**, and this case is **DISMISSED with prejudice.**

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: August 9, 2006

s/ Paul A. Magnuson  
Paul A. Magnuson  
United States District Court Judge